(29 Misc. Rep. 183.)

HURD v. NEW YORK & COMMERCIAL STEAM-LAUNDRY CO.

(Supreme Court, Special Term, New York County.   October, 1899.)

CORPORATIONS—CONSOLIDATION—LIABILITY FOR DEBTS.

Where two corporations are consolidated by the sale of all the property of one to the other in consideration of stock issued by the new corporation to the stockholders of the selling corporation, with the intention that its business shall cease, the new corporation can be compelled to account

to creditors of the selling corporation for the property so obtained, although the transfer is made without intent to defraud, and in the belief that there are no claims capable of enforcement.

Action by Jehiel T. Hurd, as receiver of the Commercial Steam-Laundry Company, against the New York & Commercial Steam-Laundry Company, to compel an accounting. Judgment for plaintiff.

E. C. Dusenbury, for plaintiff.
W. W. Westervelt, for defendant.

BEEKMAN, J. The evidence shows with sufficient clearness that the arrangement between Anthony O. Rowe and Thomas E. Sloan was that the business conducted by the Commercial Steam-Laundry Company, Limited, and that in which Sloan was engaged under the name of the New York Steam-Laundry Company, should be consolidated and conducted by a new corporation, which was accordingly organized for that purpose under the name of the New York & Commercial Steam-Laundry Company, the defendant herein. The title of the defendant of itself suggests this, in the combination which has been made of the names of the old companies. It further appears that, as soon as the new company commenced operations, both the Commercial Steam-Laundry Company, Limited (hereafter called the "Old Company"), and the New York Steam-Laundry Company ceased to do business, and have transacted none since that time. The plant and machinery of the old company were transferred to the defendant, the employés of the former entered into the service of the latter, and the customers of the old company became patrons of the new one. The president and secretary of the old company were elected to the same offices in the new one, and two out of the four trustees of the latter were directors of the other. Thus, the defendant completely absorbed the old company, its property (with the exception of some book accounts, the extent of which does not appear), and its good will, so that nothing was left of it except the skeleton organization, without functional life. The plant and machinery of the old company were valued at $20,000; that of the New York Steam-Laundry Company, at $10,000; and in payment therefor 200 shares of the defendant's stock were issued in the one case, and 100 shares in the other. The 200 shares, with which alone we are concerned, were, in the first instance, issued to Maria W. Rowe, who was the principal stockholder of the old company, and the wife of Anthony O. Rowe, its president. The bill of sale made by the old company to the defendant bears date April 30, 1891. It was authorized to be made at a directors' meeting, previously held, at which the counsel for the new company was present. Owing to the loss of the minute book, the exact terms of the resolution then passed could not be shown; but the counsel above referred to, who states that the resolution was drawn by him, testified that it authorized and directed the president and treasurer to execute said bill of sale for a consideration of $20,000, to be paid for in the stock of the New York & Commercial Steam-Laundry Company, to be issued to Mr. Rowe, as treasurer, and to be afterwards distributed among the stockholders of the Commercial Steam-Laundry Company, Limited,

as they should thereafter direct. It was subsequent to this, and on June 3, 1891, that the shares in question were issued to Maria H. Rowe. It appears, however, that some seven months later, under the advice of counsel, the certificates representing this stock were returned, and a new one was issued to "Anthony O. Rowe, as treasurer of the Commercial Steam-Laundry Company, Limited,"—an office which he held in conjunction with that of president. The evidence is that such stock has since been distributed among the stockholders of the company. It further appears that at the time of this absorption of the assets of the Commercial Steam-Laundry Company, Limited, there was a claim against it in favor of Eliza N. Hall, the validity of which was in dispute. On December 30, 1891, an action was accordingly commenced by her against said company to recover the debt. A contest ensued, which on August 9, 1893, resulted in a judgment in her favor for the sum of $4,381.16. Execution thereon having been returned unsatisfied, an action was brought by the judgment creditor against the debtor corporation for a sequestration of its property, in which final judgment was entered, appointing the plaintiff in this action receiver. The proofs do not show that there was any other indebtedness of the company than this, except a small sum, which has since been paid. The object of this action is to compel the defendant to account for, and pay over to the plaintiff, the value of the property so obtained by it, under the circumstances above stated.

I am quite clear, upon the facts before me, that the plaintiff is entitled to judgment. In the case of Cole v. Iron Co., 133 N. Y. 164, 30 N. E. 847, which was in many respects similar to this, the court held that where the transfer, by a corporation, of all its property, has the effect of terminating the regular business of the corporation, and was made and accepted by the transferee with that purpose, it is illegal, as against creditors of the corporation. As was said in the opinion (page 167, 133 N. Y., and page 847, 30 N. E.):

"The practical effect was to dissolve the grantor corporation, and subject its charter to forfeiture at the hands of the state; for it voluntarily stripped itself of all its property and assets, and became incapable, and intended to be and remain incapable, of performing its corporate duties. Such a transfer, which involves the destruction of the corporation, and an abandonment of the purposes of its organization, is illegal as against creditors whose rights are thereby sacrificed and their remedies destroyed. * * * The assets of a corporation are a trust fund for the payment of its debts, upon which the creditors have an equitable lien, both as against the stockholders and all transferees except those purchasing in good faith and for value."

The same doctrine is laid down in Thomp. Corp. § 375; and in section 6547 the author adds that where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge on the part of the transferee of all the facts necessary to charge the property in his hands with the debts of the transferror. The same principle is illustrated in the case of Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co. (C. C.) 13 Fed. 516, where it was said that the fact that stock of the new company was issued for the property of the old did not affect the creditor's right to pursue the property itself. See, also,

Brum v. Insurance Co. (C. C.) 16 Fed. 140; Fogg v. Railroad Co. (C. C.) 17 Fed. 871. The facts of the case at bar clearly bring it within the principles thus laid down. The sale of the old company's assets was not made in the usual course of business, but with the intention, participated in by the defendant, that its business should thenceforth cease. The very resolution under which the transfer was made, and which was drawn by the legal adviser of the defendant, contemplated, in terms, a division of the stock of the defendant which was issued to pay for the property among the stockholders of the old company; thus dissipating its capital, and leaving it an empty shell, with nothing out of which a creditor could obtain satisfaction of his claim. It matters not that the transaction may have been accomplished without any actual intention to defraud, and in the belief that there were no claims against the corporation capable of legal enforcement. The rights of creditors do not depend upon notice of such claims on the part of the new company, but upon the essential illegality of thus winding up the debtor corporation and transferring its assets, which constitute a trust fund for the payment of debts, without making an adequate provision for their discharge. But, beyond all this, the officers of, and parties interested in, the two corporations, were so far the same that the defendant herein was affected with notice of the existence of the claim, which was subsequently reduced to judgment. The liability of the defendant is thus clearly established, and judgment must be rendered accordingly. As the plaintiff is suing as receiver, under a judgment of sequestration, for the equal benefit of all creditors, and there is no question here of the rights of stockholders, the judgment to be awarded should limit his recovery against the defendant to such a sum as may be necessary to pay all of the debts of the old company, and the costs and expenses of the sequestration proceedings.

Unless the defendant is satisfied that there are no debts except that of the judgment creditor, an interlocutory judgment may be entered determining the issues in the case, and providing for an inquiry with respect to the extent of the indebtedness of the Commercial Steam-Laundry Company, Limited, and the sum which the defendant should be required to pay. Ordered accordingly.